APSEY v MEMORIAL HOSPITAL (ON RECONSIDERATION)

Docket No. 251110. Submitted April 6, 2005, at Lansing. Decided June 9, 2005, at 9:05 a.m. Leave to appeal sought.

Sue H. Apsey and Robert Apsey, Jr., brought a medical malpractice action in the Shiawassee Circuit Court against Memorial Hospital, doctors Russell H. Tobe and James H. Deering, and their professional corporations. The court, Gerald D. Lostracco, J., granted summary disposition for the defendants because the affidavit of merit accompanying the plaintiffs' complaint was notarized by a Pennsylvania notary public, but did not include a court certification of the notary's authority as required by MCL 600.2102, thereby rendering the affidavit a nullity and the complaint invalid. The plaintiffs appealed. The Court of Appeals, CAVANAGH, P.J., and JANSEN and GAGE, JJ., in an opinion per curiam, affirmed the trial court decision on April 19, 2005, but granted the plaintiffs' motion for reconsideration and vacated its opinion on June 2, 2005.

On reconsideration, the Court of Appeals *held*:

1. The structural placement of the statutes that relate to authentication by a notary public of a document, MCL 600.2102 and sections of the later-enacted Uniform Recognition of Acknowledgements Act (URAA), MCL 565.261 *et seq.*, does not render either one inapplicable.

2. MCL 600.2102 and URAA statutes MCL 565.262 and 565.263 relate to authentication of documents and share the common purpose of requiring verification for the authenticity of out-of-state notarial acts, so they are *in pari materia* and must be read together as one, albeit each contains no reference to the other and was enacted on a different date. The earlier act, MCL 600.2102, requires that special certification accompany notarizations by out-of-state notaries public in order for the document to be acknowledged and considered by the court, without regard to whether the document is to be entered into evidence. The URAA does not require a special certification of the authority of an out-of-state notary public. In this manner, the statutes may be read harmoniously.

3. The more specific requirements of MCL 600.2102 control over the general requirements of MCL 565.262 of the URAA. MCL

600.2102 adds a special certification requirement when an affidavit is to be officially received and considered by the judiciary. This special certification requirement is not diminished or invalidated by the subsequently enacted URAA. The special certification is a necessary part of an affidavit submitted to a court in a medical malpractice case to meet the requirement of MCL 600.2912d(1) for an affidavit of merit.

4. Although the general rule is that judicial decisions are to be given complete retroactive effect, a more flexible approach is warranted where injustice might result from full retroactivity. Because in Michigan a majority of the affidavits of merit in medical malpractice cases comes from other states and because Michigan practitioners have relied on the URAA validation requirements for out-of-state notarial acts, justice requires a prospective application. This eliminates serious injustices that could result from a retroactive application.

Reversed and remanded for further proceedings.

CAVANAGH, P.J., concurring in the disposition, but dissenting from the majority's reasoning, stated that the affidavit of merit filed in this matter met the requirements of MCL 600.2912d(1). The URAA explicitly states that it is an additional method of proving notarial acts that does not require a clerk of a court to perform an authenticating function. MCL 565.268. The URAA broadens the recognition accorded notarial acts. Although the simple method of authentication permitted by the URAA likely makes obsolete the certification method provided by MCL 600.2102, each is an alternative and viable method of verifying the authenticity of notarial acts. The trial court's dismissal of the action should be reversed and the case should be remanded for further proceedings.

NEGLIGENCE — MEDICAL MALPRACTICE — AFFIDAVITS OF MERIT — NOTARIZATION — COURT CERTIFICATION.

An affidavit of merit that must accompany a complaint in a medical malpractice action requires a court certification regarding the authority of the notary when the affidavit is taken and notarized by an out-of-state notary public; this special certification requirement is not diminished or invalidated by the Uniform Recognition of Acknowledgements Act (MCL 565.261 *et seq.*, 600.2012, 600.2912d[1]).

*Jeffery S. Zilinski* for Sue H. Apsey and Robert Apsey, Jr.

*Cline, Cline, Griffin* (by *Glenn M. Simmington* and *Jose T. Brown*) for Memorial Hospital.

*Hackney Grover Hoover & Bean* (by *Randy J. Hackney* and *Loretta B. Subhi*) for Russell H. Tobe, D.O.

*Willingham & Coté, P.C.* (by *Ray Foresman, Michael W. Stephenson,* and *Matthew K. Payok*), for James H. Deering, D.O.; and Shiawassee Radiology Consultants, P.C.

Amici Curiae:

*Linda M. Galante* for the Michigan Trial Lawyers Association.

*Charfoos & Christensen, P.C.* (by *David R. Parker*), for the State Bar of Michigan Negligence Section and the State Bar of Michigan Elder Law Section.

*Daniel W. Sherrick* for International Union, UAW.

*Olsman, Mueller & James, P.C.* (by *Jules B. Olsman* and *Phyllis A. Figiel*), for Citizens for Better Care.

*The Googasian Firm, P.C.* (by *George A. Googasian* and *Dean M. Googasian*), for the State of Bar of Michigan.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Robert Welliver* and *Heather S. Meingast,* Assistant Attorneys General, for the Department of Community Health.

*Kerr, Russell and Weber, PLC* (by *Joanne Geha Swanson, Daniel J. Schulte,* and *Michael A. Sneyd*), for the Michigan State Medical Society.

*Maddin, Hauser, Wartell, Roth & Heller, P.C.* (by *Mark H. Fink*), for Michigan Defense Trial Counsel.

Before: CAVANAGH, P.J., and JANSEN and GAGE, JJ.

JANSEN, J. Plaintiffs, Sue H. Apsey and Robert Apsey, Jr., appeal as of right a circuit court order granting summary disposition for defendants, Memorial Hospital, doing business in Owosso as Memorial Healthcare Center; two of its practitioners, doctors Russell H. Tobe and James H. Deering; and the business entities under which they practice. We reverse and remand for further proceedings.

Plaintiffs commenced this action in November 2001, stating that Sue Apsey was admitted to Memorial Healthcare Center for an "exploratory laparotomy," which resulted in the removal of a large ovarian cyst. Various complications followed. Plaintiffs allege that misdiagnoses and errant reporting attendant to those complications caused Sue Apsey to become "septic," requiring several follow-up surgeries.

Plaintiffs' affidavit of merit was prepared in Pennsylvania, using a notary public of that state. A normal notarial seal appears on the document, and it is not disputed that plaintiffs initially provided no special certification to authenticate the credentials of the out-of-state notary public. Instead, plaintiffs provided that certification after the period of limitations had run on their cause of action. Defendants moved in the trial court for summary disposition with regard to plaintiffs' medical malpractice claims, citing MCL 600.2912d and 600.2102. In granting the motions, the court reasoned that the failure to provide the special certification was fatal to the notarization and, thus, that the affidavit itself was a nullity, rendering plaintiffs' complaint invalid.

At issue in this appeal is whether MCL 565.262, the general statute concerning notarial acts, governs affi-

davits of merit in medical malpractice cases, or whether
the more demanding requirements of MCL 600.2102
apply. Plaintiffs contend that the trial court erred by
granting defendants' motions for summary disposition
and holding that an out-of-state affidavit of merit in a
medical malpractice case not only must be notarized,
but also must be accompanied by a certificate setting
forth the notary's authority.

This Court reviews de novo a trial court's decision on
a motion for summary disposition as a question of law.
*Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151
(2003); *Ardt v Titan Ins Co,* 233 Mich App 685, 688; 593
NW2d 215 (1999). Statutory interpretation likewise
presents a question of law, calling for review de novo.
*Eggleston v Bio-Medical Applications of Detroit, Inc,*
468 Mich 29, 32; 658 NW2d 139 (2003); *Haworth, Inc v
Wickes Mfg Co,* 210 Mich App 222, 227; 532 NW2d 903
(1995).

MCL 600.2912d(1) provides, in part:

> [T]he plaintiff in an action alleging medical malpractice
> or, if the plaintiff is represented by an attorney, the
> plaintiff's attorney shall file with the complaint an affidavit
> of merit signed by a health professional who the plaintiff's
> attorney reasonably believes meets the requirements for an
> expert witness. . . . The affidavit of merit shall certify that
> the health professional has reviewed the notice and all
> medical records supplied to him or her by the plaintiff's
> attorney concerning the allegations contained in the no-
> tice . . . .

Subsections 1(a) through (d) set forth the particulars to
which the expert must attest. An affidavit for these
purposes must be "confirmed by the oath or affirmation
of the party making it, taken before a person having
authority to administer such oath or affirmation."
*Holmes v Michigan Capital Med Ctr,* 242 Mich App 703,

711; 620 NW2d 319 (2000). In the medical malpractice context, a valid affidavit of merit must be filed with the complaint in order to commence an action and to toll the period of limitations. *Scarsella v Pollak*, 461 Mich 547, 552-553; 607 NW2d 711 (2000).

In this case, neither the need for an affidavit of merit nor the requirement that one be notarized is in dispute. The controversy, instead, concerns what constitutes a valid out-of-state notarization.

In 1924, our Supreme Court reiterated the legislative requirement that, if an affidavit submitted to a court is authenticated by an out-of-state notary public, in order for the court to consider the affidavit, the signature of the sister-state notary public must be certified by the clerk of the court of record in the county in which the affidavit was executed. *In re Alston's Estate*, 229 Mich 478, 480-482; 201 NW 460 (1924). Similarly, MCL 600.2102, effective in 1963, states that "where by law the affidavit of any person residing in another state . . . is required, or may be received in judicial proceedings in this state, to entitle the same to be read, it must be authenticated . . . ." MCL 600.2102(4) specifies that an affidavit taken in a sister state

> may be taken before . . . any notary public . . . authorized by the laws of such state to administer oaths therein. The signature of such notary public . . . shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court.

This language closely mirrors that which was construed by our Supreme Court in *In re Alston's Estate*, *supra* at 481; see also *Wallace v Wallace*, 23 Mich App 741, 744-745; 179 NW2d 699 (1970).

Effective in 1970, Michigan adopted the Uniform Recognition of Acknowledgements Act (URAA), MCL 565.261 *et seq.* "Notarial acts" are defined as "acts that

the laws of this state authorize notaries public of this state to perform, including . . . taking proof of execution and acknowledgements of instruments, and attesting documents." MCL 565.262(a). The URAA provides that notarial acts performed in a sister state may function in this state as if performed by a Michigan notary public if performed by "[a] notary public authorized to perform notarial acts in the place in which the act is performed." MCL 565.262(a)(i). MCL 565.263(1) of the URAA provides:

> If the notarial act is performed by any of the persons described in subdivisions (a) to (d) [sic] of section 2, other than a person authorized to perform notarial acts by the laws or regulations of a foreign country, the signature, rank or title and serial number, if any, of the person are sufficient proof of the authority of a holder of that rank or title to perform the act. Further proof of his authority is not required.

MCL 565.263(4) states that "[t]he signature and title of the person performing the act are prima facie evidence that he is a person with the designated title and that the signature is genuine."

If the present inquiry were to be decided on the basis of the URAA, the notarization of the affidavit in question would indisputably be valid. Plaintiffs' affidavit of merit bears the signature and notary seal of a Pennsylvania notary public. That status in another state carries over to this state, and the signature and the title are prima facie evidence of authenticity, MCL 565.263(4). But the signature and the notary seal do not satisfy the requirements set forth in MCL 600.2102(4). The question, then, is whether MCL 565.262 affects MCL 600.2102, and, if so, in what manner.

When this issue was initially raised before the trial court, only the applicability of MCL 600.2102 was argued. The court recognized the inflexibility of that

statute and decided to grant summary disposition. In a subsequent hearing that the court treated as a motion for reconsideration, plaintiffs argued that MCL 565.262 should apply to the exclusion of MCL 600.2102. The court was not persuaded, and, without elaboration, stated that arguments concerning MCL 565.262 would not have changed its earlier decision.

Defendant Deering argues that the specific mention of affidavits in MCL 600.2102 indicates greater legislative specificity than the general mention of notarial acts in MCL 565.262. However, the general language of the latter is obviously a consequence of the statute covering acts performed in some cases by persons other than notaries public and coverage of notarial acts performed on documents other than affidavits. The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Haworth, supra* at 227. Notaries public, either in-state or out-of-state, are expressly mentioned in MCL 565.262(a), along with the function of "attesting documents." Affidavits, and the role of the notary public in executing them, are obviously envisioned.

Both plaintiffs and defendants raise issues regarding the placement of the statutes. "[T]he meaning of the Legislature is to be found in the *terms* and *arrangement* of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v Gen Motors Corp*, 448 Mich 147, 160; 528 NW2d 707 (1995) (emphasis added). It is well, then, to note the structural placement of the two statutory schemes.

The URAA appears among statutes governing conveyances of real property. The emphasis, then, is not on documents submitted to Michigan courts, but on documents that have potentially great legal significance in

other contexts, e.g., memorializing agreements or recording conveyances and interests. However, contrary to defendants' contentions, we find that the URAA and its requirements are not limited to conveyances of real property.

MCL 600.2102 appears within the Revised Judicature Act, MCL 600.101 *et seq.*, and retains its predecessor's language concerning affidavits "received in judicial proceedings," which our Supreme Court construed as strictly requiring that special certification accompany notarizations by out-of-state notaries public. *In re Alston's Estate, supra* at 481-482. Plaintiffs point out that this statute is sandwiched between provisions governing evidence and argue that it thus applies only when the affidavit in question is to be read into evidence. However, the statute itself sets forth what is required for a sister-state affidavit "to be read," not "to be read specifically into evidence." The Legislature is presumed to have intended the meaning it plainly expressed, *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). "Read" for this purpose means acknowledged and considered by the court, not necessarily read into evidence. See *Berkery v Wayne Circuit Judge*, 82 Mich 160, 167-168; 46 NW 436 (1890).

Thus, neither the provisions of the URAA, in particular MCL 565.262 and MCL 565.263, nor MCL 600.2102 are rendered inapplicable on the basis of structural placement. These statutes relate to authentication and share the common purpose of requiring verification for the authenticity of out-of-state notarial acts. As such, the statutes are *in pari materia*. Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if each contains no reference to the other and they were enacted on different dates. *State Treasurer v Schuster,*

456 Mich 408, 417; 572 NW2d 628 (1998); *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127; 146; 662 NW2d 758 (2003). And, statutes that have a common purpose should be read to harmonize with each other in furtherance of that purpose. *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994); *Antrim Co Treasurer v Dep't of Treasury*, 263 Mich App 474, 481; 688 NW2d 840 (2004). If two statutes lend themselves to a construction that avoids conflict, that construction should control. *House Speaker v State Administrative Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993); *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 280; 597 NW2d 235 (1999). "Where a specific statutory provision differs from a related general one, the specific one controls." *Antrim, supra* at 484, citing *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994).

The two statutes can be harmonized. The URAA provides in pertinent part, "Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state." MCL 565.268. The Legislature is charged with knowledge of existing laws on the same subject and is presumed to have considered the effect of new laws on all existing laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993); *Kalamazoo v KTS Industries, Inc*, 263 Mich App 23, 34; 687 NW2d 319 (2004). MCL 600.2102 is a law of this state that requires more specific recognition requirements for notarial acts authenticating an affidavit of a person residing in another state that is received in judicial proceedings; i.e., it requires that the signature of a notary public on an affidavit taken out of state "be certified by the clerk of any court of record in the county where such affidavit shall be taken, under seal of said court." As such, the URAA, enacted after MCL 600.2102, does not diminish or invalidate the more

specific and more formal requirements of MCL
600.2102. Furthermore, this harmonious application of
the URAA and MCL 600.2102 avoids conflict. See *House
Speaker, supra* at 568-569; *Travelers Ins, supra* at 280.

For these reasons, we find that the more specific
requirements of MCL 600.2102 of the Revised Judica-
ture Act control over the general requirements of MCL
565.262 of the URAA. See *Antrim, supra* at 484, citing
*Gebhardt, supra* at 542-543. In other words, MCL
565.262 governs notarial acts, including the execution
of affidavits, in general, to which MCL 600.2102 adds a
special certification requirement when the affidavit is
to be read, meaning officially received and considered,
by the judiciary.[1] This special certification requirement
of MCL 600.2102 is not diminished or invalidated by the
subsequently enacted URAA. See MCL 565.268. In-
stead, MCL 565.268 allows for the statutes to be har-
monized. As such, the special certification is a necessary
part of an affidavit submitted to the court to meet the
requirement of MCL 600.2912d(1).[2]

---

[1] After the enactment of the URAA, this Court, in *Sellers v Goldapper*,
unpublished opinion per curiam, issued November 4, 1997 (Docket No.
196914), found a defendant's affidavit showing a meritorious defense to
be a nullity under MCL 600.2102(4) for lack of certification of the
notary's signature when the defendant was a New York resident. We view
this unpublished opinion by a panel of this Court, requiring an affidavit
from an New York resident to meet the requirements of MCL
600.2102(4), as persuasive, because of the limited case law, but note that
unpublished opinions are not binding under the rules of stare decisis.
MCR 7.215(C)(1); see also *Dyball v Lennox*, 260 Mich App 698, 705 n 1;
680 NW2d 522 (2004).

[2] We note that the dissent purports to harmonize MCL 600.2102 and
the various provisions of the URAA by rendering significant parts of
MCL 600.2102(d) nugatory. In construing a statute, a court should
presume that every word has some meaning and should avoid any
construction that would render any part of a statute surplusage or
nugatory *Jenkins v Patel*, 471 Mich 158, 167; 684 NW2d 346 (2004);
*Edgewood Dev, Inc v Landskroener*, 262 Mich App 162, 167; 684 NW2d
387 (2004).

Next, we must address the effect of plaintiffs' failure to properly authenticate the affidavit of merit, which is a failure that technically rendered the affidavit of merit defective. In *Scarsella,* the Supreme Court was faced with a complete failure to file an affidavit of merit. The Court left for later decisional development the question of the appropriate legal response when a "timely filed affidavit is inadequate or defective." *Scarsella, supra* at 553. Such decisional development from this Court indicates that, "whether the adjective used is 'defective' or 'grossly nonconforming' or 'inadequate,' " where a plaintiff's affidavit failed to meet the applicable statutory standards, it "was defective and did not constitute

---

The dissent's interpretation basically makes the certification requirement in MCL 600.2102(4) worthless or nugatory because by interpreting the URAA as an additional method that can be used instead of using the MCL 600.2102, the certificate provision is no longer required. Further, the dissent provides that the purpose of both statutes is "to verify the authenticity of notarial acts, including those involving affidavits." *Post* at 684. As noted, statutes that have a common purpose should be read to harmonize with each other in "furtherance of that purpose." *Antrim Co Treasurer, supra* at 481. The dissent's attempt to harmonize the statutes does not further a purpose of verifying the authenticity of a notarial act, but, instead, limits the requirements for verifying the authenticity of an out-of-state notarial act. When reading statutes to avoid conflict, the construction given should give effect to each without repugnancy, overreaching, absurdity, or unreasonableness. *Livonia Hotel, LLC v City of Livonia,* 259 Mich App 116, 131; 673 NW2d 763 (2003). The dissent does not give effect to MCL 600.2102. To avoid conflict and harmonize the statutes, the dissent cites MCL 565.268, which provides that the URAA is "an additional method of proving notarial acts." But the dissent avoids citing the next sentence of the MCL 565.268, which provides, "Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state." To accept our dissenting colleague's harmonizing of the statutes would clearly diminish the requirements of MCL 600.2102. If two statutes lend themselves to a construction that avoids conflict, that construction should control. *House Speaker, supra* at 568-569; *Travelers Ins, supra* at 280. The only way to avoid conflict when reading the statutes together is to read MCL 600.2102 as requiring additional requirements for affidavits to be read by the court. This does not conflict with the URAA because of MCL 565.268.

an effective affidavit," and therefore failed to support a
medical malpractice complaint for the purposes of toll-
ing the period of limitations. *Geralds v Munson Health-
care*, 259 Mich App 225, 240; 673 NW2d 792 (2003). See
also *VandenBerg v VandenBerg*, 253 Mich App 658, 662;
660 NW2d 341 (2002) (unless a plaintiff has moved for
a statutorily provided extension, the plaintiff may not
file a medical malpractice complaint without an affida-
vit of merit, then cure that deficiency by filing the
affidavit after the period of limitations has run). Con-
sequently, a belatedly filed certification of an out-of-
state notary public would not cure the defect in an
otherwise timely complaint and affidavit.[3]

Because of the injustice and inequity that could
result from our determination on this issue of first
impression, we will address whether the ramifications
(a dismissal based on the claims being time barred) of
our interpretation should be applied retroactively or
prospectively. " ' "The general rule is that judicial deci-
sions are to be given complete retroactive effect . .
. . " ' " *Ousley v McLaren*, 264 Mich App 486, 493; 691

---

[3] Our position is further supported by *Lee v Putz*, unpublished memo-
randum opinion and order of the United States District Court, Western
District of Michigan, issued December 10, 2003 (Docket No. 1:03-CV-
267), pp 4-5, in which the district court, applying MCL 600.2102, found in
connection with an affidavit of merit notarized by an out-of-state notary
that, "[b]ecause an affidavit without the appropriate certification is null
and void under Michigan law, Plaintiff has failed to assert a claim that is
cognizable in Michigan state courts." The court further found that the
plaintiff could not cure the defect because of the statute of limitations. We
note that defendant Deering appended this federal court holding to his
brief; however, for reasons not explained, the names of the parties, and
the file number, have been redacted. But an unredacted copy is attached
to defendant Memorial Hospital's brief. We further note that, although
not binding, this case stands as a recent example in which MCL 600.2102
was held to impose a certification requirement on out-of-state notaries
public involved with affidavits of merit in medical malpractice cases. See
*Sharp v City of Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001).

NW2d 817 (2004), quoting *Lincoln v Gen Motors Corp*, 461 Mich 483, 491; 607 NW2d 73 (2000), quoting *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986) (intermediate citation deleted).[4] " '[A] more flexible approach is warranted where injustice might result from full retroactivity.' " *Gladych v New Family Homes, Inc*, 468 Mich 594, 606; 664 NW2d 705 (2003), quoting *Pohutski, supra* at 696, citing *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). Complete prospective application has been deemed appropriate for a decision that "decides an ' "issue of first impression whose resolution was not clearly foreshadowed." ' " *Lindsey, supra* at 68, quoting *People v Phillips*, 416 Mich 63, 68; 330 NW2d 366 (1982), quoting *Chevron Oil Co v Huson*, 404 US 97, 106; 92 S Ct 349; 30 L Ed 2d 296 (1971).

In essence, the question before this Court is an issue of first impression whose resolution, because of the URAA, was not clearly foreshadowed. Our decision is based on a law, MCL 600.2102, requiring a special certification for out-of-state notarial acts, which law has been overlooked by practitioners in medical malpractice cases or, more likely, practitioners have been under the impression that the URAA, enacted subsequently to MCL 600.2102, was the applicable statute and that special certification was not required. Plaintiffs' counsel raised a concern at oral argument with regard to the significant effect this holding could have on medical malpractice cases in Michigan because a majority of affidavits of merit for medical malpractice cases come from out of state and practitioners have relied on the

---

[4] Although full retroactivity is favored when a decision "does not announce a new principle of law," *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 190; 596 NW2d 142 (1999), neither our Supreme Court nor this Court has ever limited application to when new principles of law are announced.

URAA validation requirements for the out-of-state notarial acts. Amici curiae have also raised concerns regarding practitioners' beliefs that the less restrictive URAA requirements for verification of notarial acts was sufficient verification and regarding the significant effect this decision would have on medical malpractice claims, which are in large part supported by affidavits of merit from out-of-state doctors.[5] Apparently, there has been confusion in the legal community about whether the more relaxed standards of the URAA applied. In light of the apparent reliance on the URAA by the legal community, we believe that justice requires a prospective application. See *Gladych, supra* at 606. Retroactive application would result in the dismissal of a large number of otherwise meritorious medical malpractice claims. Our Supreme Court has recognized that "resolution of the retrospective-prospective issue ultimately turns on considerations of fairness and public policy." *Riley v Northland Geriatric Ctr (After Remand)*, 431 Mich 632, 644; 433 NW2d 787 (1988) (opinion by GRIFFIN, J.). Fairness and public policy both support a prospective application because serious injustices could result from a retroactive application and prospective application of the ramifications for the failure to provide the MCL 600.2102(d) certification accomplishes a "maximum of justice" under the presented circumstances. *Lindsey, supra* at 68.

---

[5] The brief amicus curiae of the State Bar of Michigan asserts, "The vast majority of the members of the State Bar of Michigan who have supplied out-of-state affidavits have supplied uncertified affidavits in the belief that the plain language of the URAA would be given effect." The brief amicus curiae on behalf of the State Bar of Michigan Negligence Section and Elder Law Section asserts, "Attorneys in this State . . . . have read this URAA as obviating the need to obtain formal certification of that authority . . . as required by MCL 600.2102, in order to present a valid affidavit of merit to the court in compliance with MCL 600.2912d."

In the present case, equity also supports a deviation from the strict compliance with the statute of limitations because of understandable confusion regarding the applicable statute. *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004); *Ward v Rooney-Gandy*, 265 Mich App 515, 522 n 4; 696 NW2d 64 (2005). In *Bryant, supra* at 432-433, our Supreme Court, in discussing why a medical malpractice claim that would typically be time barred should, instead, proceed, provided:

> The equities of this case, however, compel a different result. The distinction between actions sounding in medical malpractice and those sounding in ordinary negligence is one that has troubled the bench and bar in Michigan . . . . Plaintiff's failure to comply with the applicable statute of limitations is the product of an understandable confusion about the legal nature of her claim, rather than a negligent failure to preserve her rights. . . .
>
> *  *  *
>
> Plaintiff has stated two claims that require expert testimony and therefore sound in medical malpractice. Although these claims were filed after the applicable period of limitations had run and would ordinarily be time-barred, the procedural features of this case dictate that plaintiff should be permitted to proceed with her medical malpractice claims. . . .

Similarly, plaintiffs in the present case, apparently like a significant number of the bar of Michigan, were under the impression that meeting the requirements of the URAA was sufficient to verify an out-of-state notarial act on an affidavit of merit filed with the court to support a medical malpractice claim.[6] Dismissal of plaintiffs' complaint in the present case, as in *Ward*,

---

[6] See n 5 of this opinion.

would be "fundamentally unfair and constitute[] an unjust technical forfeiture" of the cause of action. *Ward, supra* at 523. The equities in this case dictate that we find plaintiffs' claims are not time barred. But for the certification, plaintiffs' complaint would not have been dismissed. A sound affidavit of merit exists, the only problem being the failure to certify as required by MCL 600.2102(4) before the expiration of the period of limitations. The statutory purpose for medical malpractice affidavits of merit is to deter frivolous medical malpractice claims. *Dorris v Detroit Osteopathic Hosp Corp,* 460 Mich 26, 47; 594 NW2d 455 (1999). This purpose was served in the present case as defendants were put on timely notice of the claims with an affidavit of merit that met every requirement, except that the out-of-state notarial act had not been properly certified. As in *Bryant,* the "procedural features of this case dictate that plaintiff[s] should be permitted to proceed with [the] medical malpractice claims." *Bryant, supra* at 433. Thus, the equities also weigh in favor of plaintiffs' action not being barred by the statute of limitations.

For the above stated reasons, reversing the trial court's order granting defendants' motions for summary disposition and allowing plaintiffs' claims to proceed best serve justice and equity. Plaintiffs, in this case, have already presented the proper certification. With regard to all medical malpractice cases pending in which plaintiffs are not in compliance with MCL 600.2102(4), on the basis of justice and equity, plaintiffs can come into compliance by filing the proper certification. Furthermore, justice and equity also dictate a strict application from the date of this opinion. From the date of the issuance of this opinion, any affidavit of merit acknowledged by an out-of-state notary filed without the proper certification will not toll the period of limitations because the legal community is now on

notice. To the extent plaintiffs and amici curiae raise further arguments regarding the certification process being outdated, potentially impossible in some states, etc., these questions are best left for the Legislature.[7]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

GAGE, J., concurred.

CAVANAGH, P.J. (*dissenting*). I respectfully dissent. After further review and consideration, I believe this case was wrongly decided and conclude that the affidavit of merit filed in this matter met the requirements of MCL 600.2912d(1).

MCL 600.2912d(1) requires the filing of an affidavit of merit with the complaint. To be valid, an affidavit must be confirmed by the oath or affirmation of the party making it, and it must be taken before a person having authority to administer the oath or affirmation. *Holmes v Michigan Capital Med Ctr*, 242 Mich App 703, 711; 620 NW2d 319 (2000). Pursuant to the Uniform Recognition of Acknowledgments Act (URAA), MCL 565.261 *et seq.*, a notary public authorized under the laws by which he or she acts is authorized to administer the oath or affirmation in support of an affidavit filed in Michigan and, if properly executed, I believe such

_____

[7] The wisdom of a statute is for the determination of the Legislature, and the law must be enforced as written. *Smith v Cliffs on the Bay Condo Ass'n*, 463 Mich 420, 430; 617 NW2d 536 (2000); *City of Lansing v Lansing Twp*, 356 Mich 641, 648; 97 NW2d 804 (1959); *In re Worker's Compensation Lien*, 231 Mich App 556, 563; 591 NW2d 221 (1998). "A court may not inquire into the knowledge, motives, or methods of the Legislature," *Fowler v Doan*, 261 Mich App 595, 599; 683 NW2d 682 (2004), and may not construe a statute on the basis of a policy decision different from that chosen by the Legislature, *Robertson v Daimler-Chrysler Corp*, 465 Mich 732, 752; 641 NW2d 567 (2002).

affidavit is sufficient and effective on its face. See MCL 565.262(a)(i), 565.263(1) and (4).

Here, the affidavit of merit filed in this matter was confirmed by oath or affirmation in Pennsylvania before an authorized notary public. Neither the sufficiency of the jurat nor the authority of the notary public was contested. Instead, defendants argued that, because the certification requirement of MCL 600.2102 was not complied with, the affidavit of merit was a nullity. In our original opinion, we agreed. After further review and consideration, I disagree and would correct this erroneous conclusion. Because my colleagues continue to hold that MCL 600.2102 applies to nullify affidavits that are notarized in other jurisdictions and not further certified as prescribed by MCL 600.2102, I dissent.

As was argued by plaintiffs in their motion for reconsideration, and by amici curiae in their briefs, MCL 600.2102 and the URAA, particularly MCL 565.263, are harmonious and should be read *in pari materia*. Both statutes relate to authentication and have the same general purpose—to verify the authenticity of notarial acts, including those involving affidavits. See *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), quoting *Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965).

The statute in dispute, MCL 600.2102, provides a method of authenticating notarial acts, i.e., of proving that a notary public actually notarized the document. MCL 600.2102(4) states that "[t]he signature of such notary public . . . and the fact that at the time of the taking of such affidavit the person before whom the same was taken was such notary public . . . shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of

said court." MCL 600.2102 has been in its present form since 1879 and, until the URAA was enacted in 1969, appears to have been the only means of proving notarial acts.[1]

The URAA, however, explicitly states that it is "an additional method of proving notarial acts." MCL 565.268. And, MCL 565.263(4) provides that the signature and title of the notary public are prima facie evidence that he or she is a notary public and that his or her signature is genuine. That is, there is another method of proving that a notary public actually notarized the document that does not require a clerk of a court to perform the authenticating function. The majority's reliance on and interpretation of the sentence, "Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state," found in MCL 565.268 is misguided. The key phrase in that sentence is "the recognition accorded to notarial acts . . . ." Reasonably interpreted, the sentence does not eviscerate the effect of the URAA or buttress the applicability of MCL 600.2102. That is, rather than decreasing or limiting the recognition accorded notarial acts, the URAA broadens the recognition accorded to notarial acts. The majority's reasoning also creates a double standard with respect to affidavits that will be read in judicial proceedings versus those that will not. This seems to create logistical problems in that affidavits typically have the potential of ending up in a judicial proceeding, sometimes years after the notarial act was performed, although litigation was not anticipated at the time the affidavit was notarized.

---

[1] I believe the majority's continued reliance on *In re Alston's Estate,* 229 Mich 478; 201 NW 460 (1924), for the proposition that affidavits received in judicial proceedings require the special certification set forth in MCL 600.2102 is misplaced because the holding predates the enactment of the URAA.

Further, contrary to the majority's claim, my interpretation of the harmonious nature of the URAA and MCL 600.2102 does not "clearly diminish the requirements of MCL 600.2102." *Ante* 677 n 2. Although it is apparent that the simple method of authentication permitted by the URAA likely makes obsolete the certification method provided by MCL 600.2102, each is still an alternative method of verifying the authenticity of notarial acts. We may not question the wisdom of a statute or inquire about the methods of the Legislature. See *Smith v Cliffs on the Bay Condo Ass'n*, 463 Mich 420, 430; 617 NW2d 536 (2000); *McDonald Pontiac-Cadillac-GMC, Inc v Saginaw Co Prosecutor*, 150 Mich App 52, 55; 388 NW2d 301 (1986). It may well be that advances in technology, particularly communications and information technology, led to this development of law. In any event, our goal is simply to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). Consistently with that directive, and cognizant of our duty to attempt to reconcile statutes to avoid conflict, I must conclude that the URAA, particularly MCL 565.263, and MCL 600.2102 are alternative and viable means of proving notarial acts. See *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

Accordingly, on reconsideration I conclude that the affidavit of merit filed in this matter was sufficient and effective on its face. Therefore, I would reverse the trial court's dismissal of this action on the ground that the affidavit of merit was a nullity and remand the matter to the trial court for continued proceedings.