YOUNG, J.
(concurring in the result only). I concur in the result to reverse the Court of Appeals. This is a case in which the majority and the dissent offer two compelling but competing constructions of the Uniform Recognition of Acknowledgements Act (URAA) and MCL 600.2102 of the Revised Judicature Act (RJA), and, in my view, neither construction is unprincipled.[1] Both sides invoke legitimate, well-established canons of statutory construction to justify their respective positions. In short, this is a rare instance where our *139 conventional rules of statutory interpretation do not yield an unequivocal answer regarding how to reconcile the provisions of the two statutes that appear to conflict.
The majority honors the plain, unambiguous language in the more recently enacted URAA, noting that the statute explicitly states that it creates an “additional method” of authenticating notarial acts.[2] The majority theorizes, correctly I believe, that the Legislature, using the appropriate statutory language to signal its intent, is capable of prescribing a restrictive method of authentication then later approving a more lenient method as an alternative to the prior enactment without expressly repealing that earlier statute. I have no doubt of the Legislature’s ability to provide an alternative, more lenient statutory regime, without having to negate a more restrictive one. The majority believes that the Legislature has clearly signaled such an intent in this case.
The dissent responds, first, that MCL 600.2102 dictates that out-of-state affidavits that are to be received in judicial proceedings “must be authenticated” in accordance with its more stringent requirements, and, second, that the more specific provision, that of the RJA, must govern the more general provision, the URAA, when the two overlap. The dissent also believes that the “additional method” language is an insufficient signal that the Legislature intended for both statutes to coexist as alternatives. Moreover, the dissent concludes that the majority’s construction renders “nugatory” the more restrictive RJA.
*140 The dissent labels the majority’s approach a “non-interpretation” and a “non-harmonization” of the URAA and the RJA, while criticizing my characterization of it as a reasonable application of basic principles of statutory construction.[3] In the process, the dissent recoils at the suggestion that his approach and the majority’s approach are reasonable alternatives, as he believes that his interpretation is the only one that truly harmonizes the URAA and the RJA.
To the contrary, the dissent fails to explain why his “harmonization” is pre-eminent where the dissent gives little, if any, weight to the URAA’s explicit statement that it “provides an additional method of proving notarial acts.”[4] Given that the URAA expressly encompasses all notarial acts, if the URAA’s methods are not “additional” to the RJA’s methods where the statutes overlap, then I cannot conceive that the phase “additional method” has any significance. The dissent criticizes the majority for failing to give effect to the word “must,” but meanwhile falls prey to the same criticism with respect to the phrase “additional method.” The dissent’s approach cannot be the only true means of harmonization where it criticizes the majority for rendering statutory language nugatory and proceeds to do the same. The dissent does not explain why the Legislature could not have created an all-encompassing alternative methodology for proving notarial acts and thus why his construction is the superior harmonization of the statutes. The Legislature apparently intended the URAA and the RJA to coexist as alternatives where they overlap, and the majority has attempted to respect the Legislature’s will. Therefore, I believe that the best *141 “harmonization” of the two statutes allows both to coexist, as the Legislature apparently intended.
I also disagree with the dissent that the URAA renders nugatory the provisions of the RJA merely because, as a matter of practice, the public and the bar might preferentially choose to use the more liberal statute. If the Legislature can create two differing methods to accomplish the same act, then the fact that one is preferred does not render the other “nugatory” in a legal sense. See The American Heritage Dictionary of the English Language, New College Edition (1978) (defining “nugatory” as “[h]aving no power; invalid; inoperative: a nugatory statute”). Foreign affidavits to be used in judicial proceedings can still be certified under the RJA. The RJA will be neither invalid nor inoperative as a result of this decision.
Although the majority and the dissent readily expose the flaws apparent in the other’s analysis of the URAA and the RJA, I cannot conclude that either construction is entirely unfaithful to the statutory language or departs from the exacting judicial philosophy that has marked this Court in recent years. Since I believe that the Legislature has created in the URAA an alternative to the RJA for proving notarial acts, including those required in judicial proceedings, I decline to join the dissent. Like the dissent, I believe that the Legislature should dispel much of the confusion generated by the URAA and the RJA for the benefit of future litigants. I hope it will do so. However, until that time, I favor a resolution that is least unsettling and disruptive to the rule of law in Michigan, and so I concur with the result to reverse the Court of Appeals.

 It is not just the members of this Court who have struggled to reconcile the provisions of these two statutes. The Court of Appeals has twice considered this issue. Initially, it held that the more specific requirements of the RJA controlled over the requirements of the URAA and affirmed summary disposition in favor of defendants. Apsey v Mem Hosp, unpublished opinion per curiam of the Court of Appeals, issued April 19, 2005 (Docket No. 251110). After granting reconsideration, one member of the original panel urged a different reading of the statutes, while a majority of the panel continued to hold that the RJA controlled over the URAA, but reversed the trial court and gave plaintiffs an opportunity to remedy the defect. Apsey v Mem Hosp (On Reconsideration), 266 Mich App 666; 702 NW2d 870 (2005). Moreover, in their briefs filed with this Court, the parties themselves and the numerous amici curiae aligning with either side have thoroughly debated the competing approaches to construing the URAA and the RJA. Also, the Court of Appeals subsequently has questioned the correctness of its published decision in this case and, despite the fact that this case was pending before this Court, it took the unorthodox step of convening a special conflict panel to consider whether its decision in this case was correct. See White v Barbara Ann Karmanos Cancer Institute, order of the Court of Appeals, entered February 23, 2007 (Docket No. 270320).

 MCL 565.268. Importantly, the URAA definition of “notarial acts” is very broad and encompasses those also covered by the RJA. MCL 565.262(a) (“ ‘Notarial acts’ means acts that the laws of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking proof of execution and acknowledgements of instruments, and attesting documents.”).

 Post at 145.

 MCL 565.268.